# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TENNESSEE
# WESTERN DIVISION

| | | |
|---|---|---|
| JOE M. JACKSON, JR. | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| VS. | ) | No. 16-2375-STA-egb |
| | ) | |
| SUPERINTENDENT DERRICK M. TAYLOR, ET AL, | ) ) | |
| | ) | |
| Defendants. | ) | |

## ORDER CONSOLIDATING CASES,
## MODIFYING THE DOCKET,
## DISMISSING FEDERAL CLAIMS WITH PREJUDICE,
## DISMISSING STATE LAW CLAIMS WITHOUT PREJUDICE,
## CERTIFYING APPEAL WOULD NOT BE TAKEN IN GOOD FAITH,
## AND NOTIFYING PLAINTIFF OF APPELLATE FILING FEE

On May 31, 2016, Plaintiff Joe M. Jackson, Jr., an inmate at the South Central Correctional Facility in Clifton, Tennessee, filed two *pro se* complaints alleging various federal and state law claims.[1] Both complaints were accompanied by a motion for leave to proceed *in forma pauperis*. Jackson's first complaint was docketed as 16-2375, this instant matter, and his second complaint was docketed as case number 16-2376. In both cases, the Court granted Jackson leave to proceed *in forma pauperis* and assessed the civil filing fee pursuant to the Prison Litigation Reform Act ("PLRA"), 28 U.S.C. §§ 1915(a)-(b).

Although Jackson adds additional defendants in the second complaint, both complaints contain the same factual allegations. Accordingly, because both complaints involve common

---

[1] Although Jackson is presently incarcerated, this matter does not relate to events occurring during his incarceration.

questions of law or fact, the Court **ORDERS** the two cases to be consolidated for all purposes, pursuant to Rule 42(a) of the Federal Rules of Civil Procedure, under the earlier docket number. The Clerk shall close file number 16-2376 after placing a copy of this order in the file. Thereafter, the Clerk shall place copies of all documents in case number 16-2375.

Jackson's complaint seeks relief pursuant to 42 U.S.C. §§ 1983, 1985(3), and 1988; 29 U.S.C. §§ 1132(a)(1)(B), 1132(a)(3), and 185; and T.C.A. § 28-3-109(a)(3). The Clerk shall **MODIFY** the docket and record the defendants as Superintendent Derrick M. Taylor, Secretary Connie W. Wacaster, Assistant Superintendent W.B. McDaniel, Trainmaster Jeremy T. Brown, General Superintendent Andrew Martin, Trainmaster L.G. Jenkins, Engineer Theodore Elliott, Medical Services Senior Manager Hallie Burhoe, Dale McPherson, Canadian National/Illinois Central Gulf Railroad ("Railroad"),[2] United Transportation Union ("UTU"), Local Chairman William A. St. John, and Local Chairman Jeff W. Callahan. Defendants are sued in their individual and official capacity.

## BACKGROUND

This action arises out of Jackson's termination from his position with the Railroad. He alleges that he was terminated without due process and without appropriate representation from his union and that he was subjected to discriminatory conduct by Defendants. On March 3, 2007, Jackson, an African-American male, was a member of the UTU and was employed as a conductor with the Railroad. (Compl. at 6, ECF No. 1.) On March 7, 2007, Jackson received a letter notifying him of a formal investigation by Assistant Superintendent T.D. Corzine, who is not a party to this suit, to determine if Jackson had any responsibility regarding how hazardous equipment was placed on a train on March 3, 2007. (*Id.*) The complaint alleges that, on April

---

[2] Canadian National/Illinois Central Gulf Railroad is added as a defendant pursuant to Jackson's letter from April 27, 2017. (ECF No. 11.)

11, 2007, Jackson signed a resolution admitting guilt to the above described infraction without any UTU representation and over his protestations of unfairness which were disregarded by Railroad officials. (*Id.* at 7-8.)

On April 21, 2007, Jackson was working alongside a trainmaster as a brakeman. (*Id.* at 8.) Jackson was allegedly told by the Caucasian trainmaster that he needed to have a urinalysis and breathalyzer test because "that's how we treat blacks around here." (*Id.*) After taking the tests and getting results of .038 and .031 on the breathalyzer, Jackson was removed from service and taken home by a Railroad official. (*Id.* at 9.) On May 3, 2007, Jackson received a letter stating that he had violated the Railroad's Substance and Alcohol Free Environment Policy and was required to get a referral for a substance abuse professional. (*Id.*) Ten days after requesting a referral, Jackson contacted Superintendent Taylor about returning to work but was told by his secretary that Superintendent Taylor had fired him. (*Id.*) On June 15, 2007, after receiving a letter officially terminating him, Jackson contacted his union representative, Chairman St. John, regarding his dismissal without a hearing and was told by St. John that an appeal would be filed.

Jackson contends that his unemployment during the appeal process was in violation of UTU's Collective Bargaining Agreement ("CBA"). (*Id.* at 9-13.) Despite frequent calls from Jackson, St. John did not meet with Jackson until June 2009, twenty-four months after the appeal was processed. (*Id.* at 13.) At that time, St. John informed Jackson that Superintendent Taylor did not want to do business with St. John and that Jackson would not be able to return to work while Superintendent Taylor was in his position; however, it might be possible for Jackson to get his back pay for being fired without a hearing. (*Id.*) On June 10, 2010, Jackson learned from St. John that there was a new Superintendent, Andrew Martin, and that he was willing to allow Jackson to come back to work, but without receiving back pay. (*Id.*)

After Jackson expressed reluctance at going back to work without receiving back pay, he received two "harassing" and "coercive" phone calls from St. John to "take the deal" while it was still available. (*Id.* at 13-14) On July 1, 2010, Jackson was persuaded by the "discriminatory and dishonest" representations of St. John to sign a Last Chance Agreement ("Agreement") without reading; Jackson was assured by St. John that it was a good agreement. (*Id.* at 14.) After signing the agreement, Jackson met with Superintendent Martin who told him that he did not need a referral to a substance abuse professional, but he had to get a physical and drug test so that he could get back to work and "start making some money." (*Id.*) On July 7, 2010, Jackson went back to work, 1,190 days after being terminated. (*Id.* at 15.)

When Jackson returned to work and was told by other employees that he did not get a fair deal, he spoke to Martin. (*Id.*) Martin told Jackson that the only portion of the Agreement that would be enforced was the denial of back pay and to speak with St. John regarding any issues concerning the Agreement. (*Id.*) Jackson confronted St. John, telling him that the Agreement did not contain a provision for Jackson to receive back pay although the Railroad had given retroactive pay previously to terminated Caucasian employees who were not held out of service as long as Jackson. (*Id.*) Jackson alleges that St. John colluded with Martin and Taylor with no intention to be bound by the CBA, instead, creating an Agreement that was breached from the day it was signed. (*Id.*)

In another instance of alleged failed representation, Jackson signed a resolution on September 2, 2010, in which he was given a twenty-day suspension for not "marking off of work properly." (*Id.* at 16.) Jackson signed the resolution without any union representation because the alternative was being fired. (*Id.*) In a separate incident, on September 25, 2010, Jackson

missed a call for a work assignment, resulting in an investigation which was postponed on October 18, 2010, at the request of UTU Chairman Callahan. (*Id.*)

The last incident described in the complaint began on October 29, 2010, when Jackson was called to work as a conductor on a grain train. (*Id.*) While preparing the trains, Jackson was accused by the African-American engineer, T.L. Elliott, of calling him a "nigger." (*Id.* at 17.) As a result of the accusation, Trainmasters Jenkins and Brown boarded the train, told Jackson and Elliot to tie down the train, got all the parties in a truck, and asked Elliot to write down everything that happened. (*Id.*)

That evening, Jenkins terminated Jackson based on Elliott's accusations and did not pay him for that day or for the days Jackson had been scheduled to work prior to termination. (*Id.* at 18.) On December 3, 2010, after several postponements of the investigation at the request of Chairman Callahan, Jackson was dismissed effective immediately based solely on the testimony of Elliott. (*Id.* at 19.) Jackson contends that his equal rights were violated because he was subjected to harsher discipline than Caucasian employees who committed comparable acts.

In a state court criminal trial on January 21, 2014, that resulted in Jackson's present incarceration, state investigators were told by Railroad employees that Jackson was terminated for calling another employee a "nigger." This "evidence" was used, in part, to convict Jackson. (*Id.* at 20.)[3]

Jackson seeks to have the Court void the Agreement and to order the Railroad to pay him back pay from April 21, 2007, through July 1, 2010, in the amount of $585,000 and to order

---

[3] To the extent that Jackson alleges that his 2014 conviction is invalid because of Defendants' alleged misconduct, the claim is barred by *Heck v. Humphrey*, 512 U.S. 477 (1994) (holding that "civil tort actions are not appropriate vehicles for challenging the validity of outstanding criminal judgments.")

payment of other employee benefits as compensatory damages. He also seeks punitive damages and attorney fees. (*Id.* at 25-27.)

## **SCREENING STANDARD**

The Court is required to screen prisoner complaints and to dismiss any complaint, or any portion thereof, if the complaint—

> (1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or
>
> (2) seeks monetary relief from a defendant who is immune from such relief.

28 U.S.C. § 1915A(b); *see also* 28 U.S.C. § 1915(e)(2)(B).

In assessing whether the complaint in this case states a claim on which relief may be granted, the Court applies standards under Federal Rule of Civil Procedure 12(b)(6), as stated in *Ashcroft v. Iqbal*, 556 U.S. 662, 677-79 (2009), and in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-57 (2007). *Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010). "Accepting all well-pleaded allegations in the complaint as true, the Court 'consider[s] the factual allegations in [the] complaint to determine if they plausibly suggest an entitlement to relief.'" *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011) (quoting *Iqbal*, 556 U.S. at 681) (alteration in original). "[P]leadings that . . . are no more than conclusions . . . are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Iqbal*, 556 U.S. at 679; *see also Twombly*, 550 U.S. at 555 n.3 ("Rule 8(a)(2) still requires a 'showing,' rather than a blanket assertion, of entitlement to relief. Without some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirement of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests.").

"A complaint can be frivolous either factually or legally. Any complaint that is legally frivolous would *ipso facto* fail to state a claim upon which relief can be granted." *Hill*, 630 F.3d at 470 (citing *Neitzke v. Williams*, 490 U.S. 319, 325, 328-29 (1989)).

> Whether a complaint is factually frivolous under §§ 1915A(b)(1) and 1915(e)(2)(B)(i) is a separate issue from whether it fails to state a claim for relief. Statutes allowing a complaint to be dismissed as frivolous give "judges not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless." *Neitzke*, 490 U.S. at 327, 109 S. Ct. 1827 (interpreting 28 U.S.C. § 1915). Unlike a dismissal for failure to state a claim, where a judge must accept all factual allegations as true, *Iqbal*, 129 S. Ct. at 1949-50, a judge does not have to accept "fantastic or delusional" factual allegations as true in prisoner complaints that are reviewed for frivolousness. *Neitzke*, 490 U.S. at 327-28, 109 S. Ct. 1827.

*Id.* at 471.

"*Pro se* complaints are to be held 'to less stringent standards than formal pleadings drafted by lawyers,' and should therefore be liberally construed." *Williams*, 631 F.3d at 383 (quoting *Martin v. Overton*, 391 F.3d 710, 712 (6th Cir. 2004)). *Pro se* litigants and prisoners are not exempt from the requirements of the Federal Rules of Civil Procedure. *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989); *see also Brown v. Matauszak*, 415 F. App'x 608, 612-13 (6th Cir. 2011) (affirming dismissal of *pro se* complaint for failure to comply with "unique pleading requirements" and stating "a court cannot 'create a claim which [a plaintiff] has not spelled out in his pleading'") (quotation omitted); *Young Bok Song v. Gipson*, 423 F. App'x 506, 510 (6th Cir. 2011) ("[W]e decline to affirmatively require courts to ferret out the strongest cause of action on behalf of *pro se* litigants.").

## ANALYSIS

**I. Statute of Limitations**

    A. **42 U.S.C. § 1983**

The statute of limitations for a § 1983 action is the "state statute of limitations applicable to personal injury actions under the law of the state in which the § 1983 claim arises." *Eidson v. Tenn. Dep't of Children's Servs.*, 510 F.3d 631, 634 (6th Cir. 2007); *see also Wilson v. Garcia*, 471 U.S. 261, 275-76 (1985). The limitations period for § 1983 actions arising in Tennessee is the one-year limitations provision found in Tennessee Code Annotated § 28-3-104(a). *Roberson v. Tenn.*, 399 F.3d 792, 794 (6th Cir. 2005). Jackson's final dismissal from the Railroad occurred on December 3, 2010. The complaint was signed on May 27, 2016, more than six years later. Therefore, any actions related to Plaintiff's alleged wrongful termination and the events leading up to his termination are time-barred. Additionally, any actions by Defendants giving rise to a claim under § 1983 that Jackson's right to free speech was violated when he was disciplined for using a derogatory term toward another employee occurred prior to December 3, 2010. For that reason, all of Jackson's § 1983 claims are **DISMISSED** as time-barred.[4]

Furthermore, claims arising under 42 U.S.C. § 1983 generally may only be brought against state officials acting under color of state law. *See, e.g., Haines v. Fed. Motor Carrier Safety Admin.*, 814 F.3d 417, 429 (6th Cir. 2016). Jackson has not alleged that any of the defendants are state officials or acted under color of state law. Therefore, the § 1983 claims are **DISMISSED** on this ground as well.

B. **42 U.S.C. § 1985(3)**

Likewise, to the extent that Jackson alleges that Defendants conspired under 42 U.S.C. § 1985(3) to deprive him of equal protection of, and equal privileges and immunities under, the laws, those claims are also time-barred by the one-year statute of limitations on civil rights

---

[4] Because the statute of limitations defect is obvious from the face of the complaint, *sua sponte* dismissal of the time-barred claims is appropriate. *See Alston v. Tennessee Dep't of Corr.*, 28 F. App'x 475, 476 (6th Cir. 2002) (citation omitted).

actions in Tennessee. All actions occurred on or before December 3, 2010, the date that Jackson was terminated, which was six years prior to the filing of the complaint. *See* Tenn. Code Ann. § 28-3-104 (1988); *Wilson*, 471 U.S. 261 (1985). Jackson's § 1985(3) claims are **DISMISSED** as time-barred.

C. **42 U.S.C. § 1981**

The statute of limitations for employment discrimination claims under 42 U.S.C. § 1981 is four years. *Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369, 383 (2004) (determining that the four-year statute of limitations period found at 28 U.S.C. § 1658 is applicable to § 1981 actions). Although the time period is longer, Jackson's claims filed six years after his termination are still barred under the statute of limitation of § 1981 and are **DISMISSED**.

D. **29 U.S.C. § 185(a)**

Although Jackson asserts a claim pursuant to § 301 of the Labor Management Relations Act, 29 U.S.C. § 185, it is more accurately construed as a hybrid claim implied under the National Labor Relations Act. *DelCostello v. International Bd. of Teamsters*, 462 U.S. 151, 164-65, (1983). *See Daniels v. Pipefitters' Assoc. Local Union No*. 597, 945 F.2d 906, 921 (7th Cir. 1991). A breach of fair representation claim has two components.

> A hybrid section 301 action involves two constituent claims: breach of a collective bargaining agreement by the employer and breach of the duty of fair representation by the union. *See DelCostello v. International Bhd. of Teamster*s, 462 U.S. 151, 162, 103 S. Ct. 2281, 2289, 76 L. Ed. 2d. 476 (1983). "'[T]he two claims are inextricably interdependent.'" *Id.* at 164, 103 S. Ct. at 2290 (citation omitted). As such, "to recover against either the Company or the Union, [the plaintiff] must show that the Company breached the [Collective Bargaining] Agreement and that the Union breached its duty of fair representation." *Bagsby v. Lewis Bros*., 820 F.2d 799, 801 (6th Cir. 1987) (emphasis removed). Indeed, "the case [an employee] must prove is the same whether he sues one, the other, or both." *DelCostello*, 462 U.S. at 165, 103 S. Ct. at 2291.

*Black v. Ryder*, 15 F.3d 573, 583-84 (6th Cir. 1994).

The applicable statute of limitations for a hybrid § 301 action is six months. *DelCostello*, 462 U.S. at 169 (1983). A claim under § 301 accrues "when the claimant discovers, or in the exercise of reasonable diligence should have discovered, the acts constituting the alleged violation." *Noble v. Chrysler Motors Corp., Jeep Div.*, 32 F.3d 997, 1000 (6th Cir.1994) (citations and quotations omitted). However, the claims against the employer and the union in a hybrid action accrue simultaneously, and "the timeliness of the suit must be measured from the date on which the employee knew or should have known of the union's final action or should have known of the employer's final action, whichever occurs later." *Robinson v. Central Brass Mfg. Co.*, 987 F.2d 1235, 1239 (6th Cir. 1993) (quoting *Proudfoot v. Seafarer's International Union*, 779 F.2d 1558, 1559 (11th Cir. 1986)). *See also McCreedy v. Local Union No. 971, UAW*, 809 F.2d 1232, 1236 (6th Cir.), *reh'g denied*, 818 F.2d 6 (6th Cir. 1987) (stating that a hybrid section 301 claim "accrues against the company when it accrues against the union").

Therefore, when assessing the timeliness of such a complaint, the Court "must establish a single accrual date for [the hybrid] section 301 claim and then ascertain whether the plaintiff[ ] filed suit within six months of that date." *Fox v. Parker Hannifin Corp.*, 914 F.2d 795, 803 (6th Cir. 1990). Here, the accrual date was no later than December 3, 2010. Jackson's complaint was clearly filed more than six months after that date. Therefore, Jackson's hybrid claims are time-barred.

## II.     Claims 29 U.S.C. § 1132

Although Jackson cites the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1132(a)(1)(B), as a statute under which he has filed his complaint, he later clarifies in the complaint that he merely cites ERISA as grounds for his request for relief in seeking the retirements benefits not allocated during his alleged unlawful termination and not as an

independent ground for relief. (Compl. at 25-26.) Therefore, to the extent that Jackson has brought any claims under ERISA, those claims are **DISMISSED**.

### III. Claims for Breach of Contract

Jackson's remaining claims rest on allegations of breach of contact. Tennessee's statute of limitations for contract claims is six years. *Mackey v. Judy's Foods, Inc.*, 867 F.2d 325, (6th Cir. 1989); Tenn. Code Ann. § 28-3-109. Tennessee courts have adopted the discovery rule for breach of contract actions. The rule provides that a cause of action for breach of contract begins to run when a party either discovers or could have or should have discovered the breach through an exercise of reasonable judgment. *Goot v. Metropolitan Government of Nashville and Davidson County*, Case No. M2003-02013-COA-R3-CV, 2005 WL 3031638 *11 (Tenn. App. Nov. 9, 2005). In cases where the discovery rule is applied, the statute is tolled until the plaintiff discovers the breach for one of the following reasons: 1) the breach was difficult for plaintiff to detect; 2) the defendant was in a far superior position to comprehend the breach and the resulting damage; and 3) the defendant had reason to believe that the plaintiff remained ignorant that he had been wronged. In other words, despite due diligence, the plaintiff would have been unlikely to discover the breach. *Id.* (*quoting,* 31 SAMUEL WILLISON, A TREATISE ON THE LAW OF CONTRACTS §79:14, at 304 (Richard A. Lord ed., 4th ed. 2004)). In Jackson's case, he alleges that the breach of the contract occurred on July 1, 2010, when he signed the Agreement, which is within six years of filing of the complaint.

This Court has supplemental jurisdiction over Jackson's state law claims under 28 U.S.C. § 1367(a). That section provides as follows: "in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of

the same case or controversy under Article III of the United States Constitution." 28. U.S.C. § 1367(a). Still, district courts may decline to exercise supplemental jurisdiction over a related claim under certain circumstances when:

    (1) the claim raises a novel or complex issue of State law,

    (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,

    (3) the district court has dismissed all claims over which it has original jurisdiction, or

    (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

*Id.* at § 1367(c).

Generally, if a federal claim is dismissed before trial, a state claim should be dismissed as well. *Taylor v. First of Am. Bank-Wayne*, 973 F.2d 1284, 1287 (6th Cir. 1992) (quoting *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966)).

In the present case, the Court declines to exercise supplemental jurisdiction over Jackson's remaining state law claims. The Court has dismissed Jackson's federal claims because they are time-barred. Having dismissed the claims alleged under federal law, the Court finds no reason to exercise supplemental jurisdiction over Jackson's remaining claims. Therefore, the claims are **DISMISSED** without prejudice to re-filing them in state court.

## II. Leave to Amend

The Sixth Circuit has held that a district court may allow a prisoner to amend his complaint to avoid a *sua sponte* dismissal under the PLRA. *LaFountain v. Harry*, 716 F.3d 944, 951 (6th Cir. 2013). For the reasons already discussed, the Court cannot conclude that an amended pleading would cure the deficiency in Jackson's federal claims, which are time-barred.

Any amendment to cure these defects would be futile. Because the Court is dismissing the remaining state law claims without reaching the merits of the pleadings, the Court finds it unnecessary to consider whether Jackson should be granted leave to amend those claims. For these reasons, leave to amend is **DENIED**.

## **CONCLUSION**

The Court **DISMISSES** Jackson's Complaint for failure to state a claim on which relief can be granted pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1). Leave to amend is **DENIED** because the deficiencies in Jackson's Complaint cannot be cured.

Pursuant to 28 U.S.C. §1915(a)(3), the Court must also consider whether an appeal by Jackson in this case would be taken in good faith. The good faith standard is an objective one. *Coppedge v. United States*, 369 U.S. 438, 445 (1962). The test for whether an appeal is taken in good faith is whether the litigant seeks appellate review of any issue that is not frivolous. *Id.* It would be inconsistent for a district court to determine that a complaint should be dismissed prior to service on the Defendants, but has sufficient merit to support an appeal *in forma pauperis*. *See Williams v. Kullman*, 722 F.2d 1048, 1050 n.1 (2d Cir. 1983). The same considerations that lead the Court to dismiss this case for failure to state a claim also compel the conclusion that an appeal would not be taken in good faith.

Therefore, it is **CERTIFIED**, pursuant to 28 U.S.C. §1915(a)(3), that any appeal in this matter by Jackson would not be taken in good faith.

The Court must also address the assessment of the $505 appellate filing fee if Jackson nevertheless appeals the dismissal of this case. A certification that an appeal is not taken in good faith does not affect an indigent prisoner plaintiff's ability to take advantage of the installment procedures contained in § 1915(b). *See McGore v. Wrigglesworth*, 114 F.3d 601, 610-11 (6th

Cir. 1997), *partially overruled on other grounds by LaFountain*, 716 F.3d at 951. *McGore* sets out specific procedures for implementing the PLRA, 28 U.S.C. § 1915(a)-(b). Therefore, Jackson is instructed that if he wishes to take advantage of the installment procedures for paying the appellate filing fee, he must comply with the procedures set out in *McGore* and § 1915(a)(2) by filing an updated *in forma pauperis* affidavit and a current, certified copy of his inmate trust account for the six months immediately preceding the filing of the notice of appeal.

For analysis under 28 U.S.C. § 1915(g) of future filings, if any, by Jackson, this is the first dismissal of one of his cases as frivolous or for failure to state a claim. This "strike" shall take effect when judgment is entered. *Coleman v. Tollefson*, 135 S. Ct. 1759, 1763-64 (2015).

The Clerk is directed to prepare a judgment.

**IT IS SO ORDERED.**

                                          **s/ S. Thomas Anderson**
                                          S. THOMAS ANDERSON
                                          CHIEF UNITED STATES DISTRICT JUDGE

Date: February 7, 2018.